**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

MARGOT BIGUM

     Plaintiff,

v.

KURT ROSE;

LONGMONT POLICE DETECTIVE JON HIGH, in his individual capacity;
LONGMONT POLICE OFFICER JUSTIN CLARK, in his individual capacity.

     Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Margot Lynn Bigum, through her attorneys Adam Frank, Faisal Salahuddin, and Melissa Roth of FRANK & SALAHUDDIN LLC, files this Complaint and Demand for Jury Trial against Defendants Kurt Rose and Longmont Police Officers Justin Clark and Jon High and respectfully alleges as follows:

**INTRODUCTION**

Federal law prohibits a person from secretly using a recording device to capture the communications of others without court approval, unless one of the parties has given their prior consent. 18 U.S.C. § 2810, et seq. (Federal Wiretapping Act). It is likewise a violation of federal law to use or disclose any information acquired by illegal electronic eavesdropping. *Id.*

Beginning in the fall of 2015 and continuing through February 2018, repeat domestic violence offender Kurt Rose conducted an illegal eavesdropping operation on his then-wife, Plaintiff Margot Bigum. Mr. Rose illegally eavesdropped on Ms. Bigum in their marital home, without her knowledge or consent by placing multiple recording devices around their home: in the basement, in

1

the hallway, and in the couple's bedroom. He then used these illegal recordings to set in motion a chain of events designed to give him an upper hand in his pending divorce from Ms. Bigum.

In July 2018, Defendant Rose delivered many hours of these surreptitious recordings to the Longmont Public Safety Department at the request of the law enforcement Defendants. The law enforcement Defendants knew the recordings had been made surreptitiously and without permission from any party to the recording when they requested them from Defendant Rose. In spite of this knowledge, the law enforcement Defendants used the recordings in the criminal investigation of the Plaintiff resulting in false criminal charges being filed against Plaintiff.

By intercepting, disclosing and using Plaintiff's private oral communications, Defendants have acted in violation of federal and state law and caused damages to Plaintiff. Most importantly, based on Defendants' illegal actions, Ms. Bigum is facing false criminal charges, and in that prosecution, there is a protection order that severely limits Ms. Bigum's contact with her seven-year-old son, L.H.R, even though there are no allegations of abuse or endangerment as it relates to L.H.R. Plaintiff brings this lawsuit to remedy the harm caused by Defendants' illegal conduct as well to deter other public servants from similarly abusing their positions.

**PARTIES**

1. Plaintiff Margot Bigum is a citizen of the United States and was a resident of Colorado at all times relevant to this complaint.

2. Ms. Bigum was married to Defendant Kurt Rose from February 2013 until December 2018.

3. Mr. Rose is a citizen of the United States and was a resident of Colorado at all times relevant to this complaint.

4. Defendant Kurt Rose has multiple convictions for crimes involving domestic violence.

5. Defendant Detective Jon High is a citizen of the United States and was a resident of Colorado at all times relevant to this complaint.

6. At all times relevant to this complaint, Defendant High was an agent of the State within the meaning of 18 U.S.C. § 2510(6).

7. Defendant Justin Clark is a citizen of the United States and was a resident of Colorado at all times relevant to this complaint.

8. At all times relevant to this complaint, Defendant Clark was an agent of the State within the meaning of 18 U.S.C. § 2510(6).

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, because the action arises under 18 U.S.C. § 2510, *et seq.* and 42 U.S.C. § 1983.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because the acts complained of occurred in the District of Colorado.

## FACTUAL ALLEGATIONS

11. Plaintiff, Margot Bigum (formerly Margot Rose) met Defendant Kurt Rose in 2010.

12. Plaintiff and Defendant Rose became involved in a romantic relationship in 2010.

13. On May 16, 2012, Ms. Bigum gave birth to the couple's only child, L.H.R.

14. Plaintiff and Defendant Rose were married in February 2013.

15. Defendant Rose has three other children from a prior relationship.

16. Before Defendant Rose met Ms. Bigum, he had pled guilty to committing at least one act of domestic violence against a previous romantic partner.

17. In July 2014, Defendant Rose was in a car accident.

18. Defendant Rose was injured in that July 2014 car accident.

19. Although Defendant Rose had made baseless accusations of infidelity against Ms. Bigum before, Defendant Rose's imagined belief in Ms. Bigum's infidelity increased dramatically after the car accident.

20. After the July 2014 collision, Defendant Rose's paranoia increased to the point that Defendant Rose began placing recording devices in the martial home to secretly capture recordings of Ms. Bigum.

21. Defendant Rose's digital stalking of Ms. Bigum began on or about October 2015.

22. In October 2015, Defendant Rose began recording Ms. Bigum in order to monitor her when he was not at the home, without Ms. Bigum's knowledge or consent.

23. In October 2015, when Defendant Rose began digitally stalking Plaintiff, he did so with the intent of capturing evidence of Plaintiff's suspected infidelity.

24. In October 2017, Defendant Rose placed a recording device in the Plaintiff's and Defendant Rose's then-martial bedroom.

25. Defendant Rose placed the recording device in the marital bedroom without Plaintiff's knowledge or consent.

26. Defendant Rose's October 2017 recording secretly captured over 28 hours of Ms. Bigum in her home, without her knowledge or consent.

27. Defendant Rose was not a part of any communications in the October 2017 recording.

28. Defendant continued to intermittently record Ms. Bigum without her knowledge or consent through February 2018.

29. Defendant Rose was not a party to any of the communications he secretly recorded.

30. In January 2018, Defendant Rose demanded that Plaintiff take a polygraph examination.

31. Defendant Rose demanded the polygraph examination include questions regarding multiple men who he imagined Plaintiff had engaged in a sexual relationship with, including Defendant's son from a previous relationship.

32. Plaintiff complied with the request and sat for the polygraph examination.

33. The examination consisted of questioning Plaintiff regarding her sexual history.

34. The examination showed no deception by Plaintiff.

35. The examination showed no infidelity by Plaintiff.

36. However, due to Defendant Rose's extreme paranoia, even after the polygraph showed no deception, Defendant Rose doubted the reliability of the results of the polygraph.

37. Defendant Rose even accused Plaintiff of performing a sex act on the polygraph examiner to obtain a favorable result.

38. Despite the lack of deception on Plaintiff's part as shown by the polygraph, on February 28, 2018, Defendant Rose forced Plaintiff to move out of the marital home located at 602 Barberry Drive, Longmont, Colorado 80503.

39. Until that time, Plaintiff had been L.H.R.'s primary caretaker.

40. After being forced out of the marital home, Plaintiff was forced to leave her son, L.H.R. in the care of Mr. Rose.

### Defendant Rose Distributes the Illegal Recordings to the Longmont Police

41. In July 2018, Defendant Rose brought a hard drive and a cell phone to the Longmont Police Department, where Defendant Rose met with Defendant Clark.

42. Defendant Rose claimed he had evidence on the hard drive and cell phone that Plaintiff had engaged in sexual contact with one of Defendant Rose's sons (J.R.) from a previous relationship.

43. Defendant Rose told Defendant Clark that the hard drive and cell phone contained secret recordings of Plaintiff made in the marital home without her knowledge or consent.

44. Defendant Rose told Defendant Clark that he was not present for any of the oral communications in those recordings.

45. Thus, at all times the Defendant Clark knew that the digital evidence Defendant Rose gave him had been illegally obtained. Defendant Clark then asked Defendant Rose to bring him the unlawfully obtained recordings.

5

46. In July 2018, after being requested to do so by Defendant Clark, Defendant Rose, delivered many hours of these recordings to the Defendant Clark who then used the recordings in the criminal investigation of Plaintiff and in bringing criminal charges against her.

47. Soon thereafter, Defendant High, a Longmont Police Detective, obtained these and additional recordings from Defendant Rose with knowledge that they had been made illegally.

48. Knowing that the recordings violated federal law, Defendant High used the recordings in various aspects of his investigation, in drafting legal documents in support of the prosecution of Plaintiff and distributed them when presenting the case to the Boulder District Attorney's Office.

49. As a result of Defendants' illegal conduct, Plaintiff is the subject of a pending criminal case arising out of an allegation involving Defendant Rose's son (J.R.) from a previous relationship. The criminal case is pending in Boulder District Court.

50. Since the time of their separation, Defendant Rose has taken complete control over Plaintiff's contact with her own son, L.H.R..

51. Defendant Rose has objected to Plaintiff having any parenting time with L.H.R..

52. Defendant Rose has not cooperated with the parenting time order entered in the divorce case and refused to allow Margot's son, L.H.R., to enroll in therapy he needs over the loss of his mother.

53. Defendant Rose is threatening to relocate with L.H.R. to Georgia.

54. Although there are no allegations of abuse or endangerment as it relates to L.H.R., a condition of the protection order entered in the criminal case severely limits the contact that Ms. Bigum is permitted to have with L.H.R..

55. Because of Defendants' illegal conduct, Ms. Bigum experienced and continues to experience damages including severe emotional distress due to the restrictions on her parental rights to L.H.R., and ability to care for her son, L.H.R., attorneys' fees and costs.

## CAUSES OF ACTION

### First Cause of Action
### Interception, Disclosure and Use of Private Oral Communications in Violation of The Federal Wiretap Act
### 18 U.S.C. §§ 2510 *et seq.*, Against Defendant Rose

56. Plaintiff incorporates all other paragraphs as if fully detailed herein.

57. Defendant Rose intentionally and willfully violated federal law by secretly placing recording devices around the family home to intercept Plaintiff's private oral conversations, in areas and under circumstances where she had a reasonable expectation of privacy.

58. Beginning in 2015 and continuing through February 2018, Defendant Rose made many hours of non-consensual surreptitious recordings of Plaintiff's conversations and activities in the privacy of the family home, thereby intentionally and willfully violating federal law.

59. Defendant Rose was not a party to any of the oral communications he intercepted.

60. Ms. Bigum had a reasonable expectation that her oral communications were not subject to interception in her home.

61. Defendant Rose used the recordings to coerce one of his other sons to accuse Plaintiff of having sexual contact with him.

62. Defendant Rose also used the recordings to instigate a criminal investigation against Plaintiff.

63. The criminal charges and restrictions on Plaintiff's access to her son, L.H.R., were a foreseeable consequence of Defendant Rose's actions.

64. Thus, Defendant Rose's violation of the federal wiretap act proximately caused Plaintiff severe emotional distress, loss of access to her son, attorney's fees, and costs.

65. Plaintiff is also entitled to statutory damages as a result of Defendant Rose's violation of federal law.

### Second Cause of Action

**Disclosure and Use of Private Oral Communications
in Violation of The Federal Wiretap Act
18 U.S.C. §§ 2510 *et seq.*, Against Defendant Clark**

66. Ms. Bigum incorporates all other paragraphs as if fully detailed herein.

67. In July 2018, Defendant Rose brought many hours of illegally obtained recordings to Defendant Clark.

68. Defendant Rose told Defendant Clark that he obtained the recordings of Plaintiff's oral communications without Plaintiff's consent, in Plaintiff's home where she had a reasonable expectation of privacy, and under circumstances where Defendant Rose was not party to the oral communications.

69. At all times, Defendant Clark knew that the recordings brought to him by Defendant Rose were illegally obtained in violation of the Federal Wiretap Act.

70. Defendant Clark instructed Defendant Rose to bring more of these recordings to the Longmont Police for use in a criminal investigation against Plaintiff.

71. Defendant Rose complied.

72. Defendant Clark then used and disclosed the illegal recordings in a criminal investigation of Plaintiff.

73. The resulting criminal charges and restrictions on Plaintiff's access to her son, L.H.R., were a foreseeable consequence of Defendant Clark's actions.

74. Thus, Defendant Clark's violation of the federal wiretap act proximately caused Plaintiff severe emotional distress, loss of access to her son, attorney's fees, and costs.

75. Plaintiff is also entitled to statutory damages as a result of Defendant Clark's violation of federal law.

**Third Cause of Action
Disclosure and Use of Private Oral Communications
in Violation of The Federal Wiretap Act
18 U.S.C. §§ 2510 *et seq.*, Against Defendant High**

76. Ms. Bigum incorporates all other paragraphs as if fully detailed herein.

77. Defendant Clark's use and disclosure of the illegally obtained recordings led to Defendant High's involvement with the recordings.

78. In August 2018, Defendant High requested Defendant Rose bring additional recordings of Plaintiff's private oral communications so that they could be used in a criminal investigation.

79. Defendant High used and disclosed the illegal recordings of Plaintiff's private oral communications in a criminal investigation.

80. Knowing that the recordings violated federal law, Defendant High used the recordings in various aspects of his investigation, in drafting legal documents in support of the prosecution of Plaintiff and distributed them when presenting the case to the Boulder District Attorney's Office.

81. Defendant High knew the recordings had been obtained without Plaintiff's consent, in Plaintiff's home, where she had a reasonable expectation of privacy.

82. Defendant High knew that Defendant Rose was not a party to any of the oral communications Defendant Rose had intercepted.

83. Defendant High knew that the recordings he was distributing had been obtained in violation of the Federal Wiretap Act.

84. Defendant High then used and disclosed the illegal recordings in a criminal investigation of Plaintiff.

85. The resulting criminal charges and restrictions on Plaintiff's access to her son, L.H.R., were a foreseeable consequence of Defendant High's actions.

86. Thus, Defendant Clark's violation of the federal wiretap act proximately caused Plaintiff severe emotional distress, loss of access to her son, attorney's fees, and costs.

**Fourth Cause of Action**
**Deprivation of Federal Rights in Violation of 42 U.S.C. § 1983**
**Against Defendant Clark**

87. Plaintiff incorporates all other paragraphs as if fully detailed herein.

88. The Federal Wiretap Act embodies the federal rights at issue in this case.

89. The Federal Wiretap Act makes it unlawful for any person to intentionally "disclose" or "use" the "contents of any wire, oral, or electronic communication" when such person knows or has reason to know that the information was illegally intercepted.

90. By violating Plaintiff's rights under the Federal Wiretap Act as explained above, Defendant Clark rendered himself liable to Plaintiff under 42 U.S.C. § 1983.

### Fifth Cause of Action
### Deprivation of Federal Rights in Violation of 42 U.S.C. § 1983
### Against Defendant High

91. Plaintiff incorporates all other paragraphs as if fully detailed herein.

92. The Federal Wiretap Act embodies the federal rights at issue in this case.

93. The Federal Wiretap Act makes it unlawful for any person to intentionally "disclose" or "use" the "contents of any wire, oral, or electronic communication" when such person knows or has reason to know that the information was illegally intercepted.

94. By violating Plaintiff's rights under the Federal Wiretap Act as explained above, Defendant High rendered himself liable to Plaintiff under 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in her favor against Defendants, and award her all relief as allowed by law, including but not limited to the following:

a) Appropriate relief at law and equity;

b) injunctive relief and other appropriate equitable relief;

c) Statutory damages,

d) Compensatory damages, including for emotional distress, as allowed by law;

e) Punitive, exemplary and liquidated damages as allowed by law;

f) Relief in the nature of mandamus;

g) Attorneys' fees and the costs associated with this action on all claims pursuant to 42 U.S.C. § 1988 and all applicable law;

h) Pre- and post-judgment interest at the appropriate lawful rate;

i) Any further relief this Court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated: December 24, 2019

*s/Faisal Salahuddin*
Adam Frank
Faisal Salahuddin
Melissa Roth
FRANK & SALAHUDDIN LLC
1741 High Street
Denver, CO 80218
Telephone: (303) 974-1084
Fax: (303) 974-1085
adam@fas-law.com
fas@fas-law.com
melissa@fas-law.com
*Attorneys for Plaintiff*